# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3594 | **DATE** | Jan. 12, 2005 |
| **CASE TITLE** | Andrew Corp. v EMS technologies, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendant's motion to transfer to the Northern District of Georgia is denied, defendant's motion to dismiss is granted, and defendant's motion to strike the Petelle declaration is denied as moot. Status hearing date of 1/26/05 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | JAN 7 | |
| | Notified counsel by telephone. | | date docketed | 33 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 3594 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| EMS TECHNOLOGIES, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Andrew Corporation ("Andrew") filed a one-count complaint against defendant EMS Technologies ("EMS") pursuant to 35 U.S.C. § 271 et seq, alleging that defendant designs and sells antennae and antennae control systems that infringe four of plaintiff's patents: (1) U.S. patent number 6,567,051 ("the '051 patent"); (2) U.S. patent number 6,573,875 ("the '875 patent"); (3) U.S. patent number 6,590,546 ("the '546 patent"); and (4) U.S. patent number 6,600,457 ("the "457 patent")(collectively "the Andrew Patents"). Defendant has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6), or in the alternative to transfer venue to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). Defendant has also moved to strike the declaration of James E. Petelle ("Petelle"), alleging that plaintiff improperly used the attorney-client privilege as a sword and a shield. For the following reasons, the motion to transfer is denied, the motion to dismiss is granted, and the motion to strike is denied as moot.



## BACKGROUND

Plaintiff Andrew is a Delaware corporation with its principal place of business in Orland Park, Illinois. The Andrew Patents are for antennae control systems and related devices. Defendant EMS is a Georgia electronics device company with its principal place of business in Norcross, Georgia. Defendant develops and manufactures advanced technology hardware products for communications systems. Plaintiff's complaint does not specify which of defendant's products it accuses of infringing its patents. The parties appear to agree, and have communicated informally, that plaintiff accuses defendant's Cobra antennae line of products ("Cobra Line"). The Cobra Line was developed, designed and marketed by EMS Wireless, a division of EMS that is also headquartered in Norcross, Georgia.

## DISCUSSION

### I. Motion to Transfer

The court begins with the motion to transfer. 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Pursuant to §1404(a) a court may transfer a civil action to another district when: (1) venue is proper in both the transferor and transferee courts; (2) transfer serves the convenience of the parties and witnesses; and (3) transfer is in the interest of justice. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986). The decision to transfer stems from the sound discretion of the trial judge where the task of weighing factors for and against transfer "necessarily involves a large degree of subtlety and latitude." Id. As the moving party, defendant must show that the "transferee forum is clearly more convenient" than the transferor forum. Heller Financial, Inc., v.

Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989) (citing Coffey, 796 F.2d at 219-220). Further, defendant must show that a transfer will promote the efficient administration of justice, rather than shift the inconvenience from one party to the other. See Black v. Mitsubishi Motors Credit of America, Inc., 1994 WL 424112, at *1 (N.D. Ill. Aug. 10, 1994).

Defendant does not dispute that venue is proper in the Northern District of Illinois, the proposed transferor court. The parties agree that venue is also proper in the proposed transferee court, the Northern District of Georgia. Therefore, the court has the power to transfer the case if to do so is in the interest of justice and for the convenience of parties and witnesses, and turns its attention to the third prerequisite for transfer.

The court must consider the relevant private and public interests in evaluating the convenience and fairness of a transfer of venue. The private interests include: (1) the plaintiff's initial choice of forum; (2) the situs of material events; (3) the ease of access to sources of proof; (4) the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of the witnesses; and (5) the convenience to the parties, specifically their respective residences and their ability to bear the expense of litigating in a particular forum. Georgouses v. NaTec Resources, Inc., 963 F. Supp. 728, 730 (N.D. Ill. 1997).

A plaintiff's choice of forum is entitled to substantial weight, particularly when it is also its home forum. Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd., 776 F. Supp. 1271, 1276 (N.D. Ill. 1991)(the defendant "bears a heavy burden to show that the inconvenience of the parties and witnesses and the dictates of justice are substantial enough to overcome the presumption in favor of Illinois courts."). Unless the balance weighs strongly in the defendant's favor, a plaintiff's choice of forum should rarely be disturbed. Vandeveld v. Christoph, 877 F.

3

Supp. 1160, 1167 (N.D. Ill. 1995)(citations omitted). A plaintiff's choice is not, however, conclusive and can be overcome if defendants show that, "the inconvenience to the parties and witnesses and the dictates of justice are substantial enough to overcome the presumption in favor of [the plaintiff's home forum]." FUL Inc. v. Unified School Dist. No. 204, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993). The court concludes that defendant has not met its heavy burden here, and plaintiff's choice of forum is entitled to conclusive weight.

In the instant case, plaintiff's connection to Illinois, its home forum, is substantial. Plaintiff's principal place of business, corporate headquarters and largest manufacturing facility are located in Illinois. Cf. Matweld, Inc. v. Portaco, Inc., 2004 WL 1403696, at *2 (N.D. Ill. June 23, 2004) (giving little weight to plaintiff's choice of forum in Illinois because plaintiff had no office or continuing business presence there). Nearly all of plaintiff's design work relating to its antennae control systems and related devices is performed at its Orland Park headquarters, where it employs over 1,000 people. Because Illinois plaintiff's home forum, plaintiff's choice is entitled to its usual substantial deference. Sitrick v. FreeHand Systems, Inc., 2003 WL 1581741, at *3 (N.D. Ill. Mar. 27, 2003).

Plaintiff's choice, however, is "simply one factor among many to be considered." GEN 17, Inc. v. Sun Microsystems, Inc., 953 F. Supp. 240, 242 (N.D. Ill. 1997)(quoting Club Assistance Program, Inc. v. Zuckerman, 598 F. Supp. 734, 736-37 (N.D. Ill. 1984)). "[T]he weight given to the plaintiff's choice of forum is lessened if the chosen forum shares relatively weak connections with the operative facts giving rise to the claim." Von Holdt v. Husky Injection Molding Systems, Ltd, 887 F. Supp. 185, 188 (N.D. Ill. 1995). Thus, the court must

consider the situs of material events to determine how much weight to assign plaintiff's choice of forum.

The instant claim arises out of defendant's alleged infringement of four of plaintiff's patents. Courts in this district have repeatedly held that intellectual property disputes usually focus on the activities of the alleged infringer, its employees, and its documents. Matweld, 2004 WL 1403696, at *2; Energaire Corp. v. E.S. Originals, Inc., 1999 WL 1018039, at *2 (N.D. Ill. Nov. 2, 1999); Wen Products, Inc. v. Master Leather, Inc., 899 F. Supp. 384, 386 (N.D. Ill. 1995). In the instant case, defendant argues that the matter is more properly brought in the Northern District of Georgia, where defendant has established that all of the alleged infringing products were developed and manufactured, than in the Northern District of Illinois, to which defendant claims it has "little or no connection."

Defendant and its Cobra Line, however, appear to be more connected to Illinois than defendant suggests. Indeed, Donald L. Runyon ("Runyon"), principal engineer of EMS, testified at his deposition that while all EMS sales are made in Georgia, of the 300 to 400 Cobra Line antennae that have been sold, none were shipped to Georgia, and at least seven have been shipped to Illinois. It thus seems likely that more Cobra Line products are in use in Illinois than in Georgia. Runyon also testified that there are two EMS sales representatives in Illinois, although they work from home, and that one of the representatives is directly responsible for antenna sales. Because the situs of material events only slightly favors transferring the case to Georgia, the court only slightly lessens the weight typically given to a plaintiff's choice of forum.

The other three private interest factors also offer no support for transfer to Georgia. Ease of access to evidence and sources of proof is neutral. Defendant argues that all of the documents

related to the design, manufacture and marketing of the Cobra Line are in Georgia, and that caselaw favors litigating patent cases where the "alleged acts of infringement occurred and the defendant has a regular and established place of business so as to facilitate the production and investigation of books, records and other data necessary to the discovery and trial techniques employed in the patent field." Ardco, Inc. v. Page, Ricker, Felson Marketing, Inc., 25 U.S.P.Q.2d 1382, 1386 (N.D. Ill. 1992)(quoting Spound v. Action Industries, Inc., 369 F. Supp. 1066, 1069 (N.D. Ill. 1979). Changes in copying technology and information storage, however, have rendered many traditional concerns about document production moot. As other courts have recently noted, "all relevant documents will have to be collected, copied, inspected and sent to the offices of trial counsel [in both venues.]" Sitrick, 2003 WL 1581741, at *3(quoting CoolSavings.com, Inc. v. IQ.Commerce, Corp., 53 F. Supp. 2d 1000, 1006 (N.D. Ill 1999)).

Defendant's own arguments also work against its motion for transfer because defendant has alleged in its motion to dismiss that a "crucial" piece of "prior art" that EMS designed, developed and manufactured invalidates one of the Andrew Patents, the '875 patent. The evidence that plaintiff needs to counter what appears to be defendant's likely affirmative defense of invalidity is located in Illinois, where plaintiff maintains all information relating to the '875 patent. See Safe Bed Technologies Co. v. KCI USA, Inc., 2002 WL 1769991, at *6 (N.D. Ill. July 31, 2002); Energaire,1999 WL 1018039, at *3; Abbott Lab. v. Zenith Lab., Inc., 35 U.S.P.Q.2d 1161, 1164 (N.D. Ill. 1995). The court is not persuaded by defendant's argument because "all four patents at issue will imminently be the subject of an 'inter partes' reexamination proceeding in the U.S. Patent Office," issues of invalidity will not arise in the instant case. Defendant has raised the issue of invalidity, and cannot use speculation about future

action by the Patent Office to remove the likely possibility of an affirmative defense from the court's consideration of venue. Accordingly, the ease of access to evidence and sources of proof factor is neutral.

The forth factor, the convenience of witnesses, is often considered the most important factor in the transfer balance. First Horizon Pharmaceutical Corp. v. Breckenridge Pharmaceutical, Inc., 2004 WL 1921059, at *4 (N.D. Ill. July 21, 2004)(citation omitted). The court must consider the effect of location of the witnesses on the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses. Energaire, 1999 WL 1018039, at *3; see also Georgouses, 963 F. Supp. at 730-31. In deciding this factor, the court considers the number of witnesses located in each district, as well as the nature and importance of the witnesses' testimony. Energaire, 1999 WL 1018039, at *3. Defendant identifies both party and non-party witnesses residing in Georgia, and plaintiff does the same for Illinois. Plaintiff identifies seven employee-witnesses in Illinois, and defendant identifies seven employee-witnesses in Georgia. Neither party describes the testimony of any of its witnesses in detail, or suggests any particular reason why any of these employees could not travel to testify other than normal business inconvenience, which the court discusses below. The convenience of employee-witnesses is therefore a draw.

The convenience of non-party witnesses is substantially more important than the convenience of party witnesses because the latter are within the parties' control. First Horizon, 2004 WL 1921059, at *4. Defendant identifies six non-party witness who reside in Georgia, outside the subpoena power of this court. Although defendant vigorously attacks plaintiff's claim that its non-party witness are necessary and criticizes plaintiff's failure to proffer sufficient

7

information about their testimony, defendant provides little more information about its own non-party witnesses.[1] This is insufficient because the party seeking transfer must proffer a general statement of the testimony of non-party witnesses. Avesta Sheffield v. Olympic Continental Resources, 2000 WL 198462, at *6 (N.D. Ill. Feb. 14, 2000). Defendant's failure to describe the relevant testimony of many of its non-party witnesses prevents the court from evaluating the nature and importance of their testimony.

Plaintiff identifies two non-party witnesses, Jim Giacobazzi ("Giacobazzi") and Bob Eliott ("Eliott"), whom plaintiff intends to call to testify at trial, who are located in Illinois. Giacobazzi is the inventor of one of the patents asserted who apparently is not an Andrew employee, and Elliot is a design engineer formerly employed by Andrew. Plaintiff submits the declaration of James Petelle, an attorney for plaintiff, in support of its claim that Giacaobazzi and Eliott have knowledge of "EMS's infringement, as well as the manufacturing, use and sale of Andrew's Patented Inventions." First, the court is troubled that plaintiff chose to file an affidavit by an attorney, Petelle, testifying to the factual basis underlying plaintiff's opposition to the transfer motion, and then repeatedly asserted attorney-client privilege during Petelle's deposition.[2] Contrary to defendant's assertion in its motion to strike Petelle's declaration that plaintiff prevented defendant from probing the allegations in Petelle's declaration, however,

---

[1] For example, defendant's brief identifies two non-party witnesses as "Michael Gulledge: EMS Wireless's former Vice President of Sale[sic] and Marketing" and "Cingular representatives: EMS key customers based in Atlanta." Runyon's declaration provides limited further detail, but regarding only two of the six non-party witnesses identified by defendant.

[2] The court notes that plaintiff's claim during Petelle's deposition that discovery was limited to issues of venue only was incorrect. The court never issued an order limiting the scope of discovery.

8

Petelle did ultimately respond to a majority of the questions posed, despite the privilege objections.

Second, the court notes that Petelle's declaration contains inadmissible hearsay regarding the knowledge of others. As a corporate officer of plaintiff, Petelle may be able to testify to Giacaobazzi and Eliott's knowledge of plaintiff's product. Petelle cannot, however, testify to their knowledge of defendant's products without providing a foundation for Petelle's assertion that Giacaobazzi and Eliott had knowledge beyond that of plaintiff's products. The court therefore has disregarded the portions of Petelle's declaration regarding Giacaobazzi and Eliott's knowledge of defendant's products. Even without these portions, however, Petelle's admissible testimony that two key non-party witnesses who can testify about the manufacturing, use and sale of plaintiff's inventions are in Illinois is enough to rebut defendant's assertion that the location of non-party witnesses favors transfer to Georgia.

Thus, many of the witnesses who may testify are located in Georgia, and many witnesses are also located in Illinois.[3] Moreover, defendant has presented no evidence that the witnesses it identifies would be unwilling to travel to Illinois to testify. Avesta Sheffield, 2000 WL 198462, at *6 (denying transfer where movant did not indicate that witnesses would refuse to testify). The court also notes that in intellectual property cases involving technical issues, testimony is frequently presented via depositions, including video depositions, with little effect on the quality

---

[3]The court notes that several of the cases cited by defendant in support of its argument that employee witness location is particularly important in a patent case are factually distinguishable from the instant case. For example, defendant cites to Matweld, 2004 WL 1403696, in which the court granted the defendant's motion to transfer in part because defendant's employees were located in the transferee district, and the plaintiff identified no witnesses in the transferor district. In contrast to Matweld, each party here identifies employee-witnesses in the venue it prefers.

of the evidence. Medi USA v. Jobst Inst., Inc., 791 F. Supp. 208, 211 (N.D. Ill. 1992). Thus, the convenience of witnesses factor is at best a draw.

The last private factor, convenience to the parties, is similarly neutral. As stated above, merely transferring inconveniences from one party to another is not a basis for granting a §1404(a) motion to transfer. See Abbott Lab., 35 U.S.P.Q.2d at 1164-1165. Defendant argues that plaintiff, because of its "presence and operations in Georgia" through facilities in the Atlanta-metro area, and overall larger size and resources, can more conveniently litigate this action in Georgia. Defendant also argues that Georgia is more convenient because a trial in Illinois would require defendant to remove a substantial portion of its workforce from Georgia. Plaintiff responds that it too will have to bear the burden of making available a number of key officers and personnel who have knowledge concerning the patents-at-issue. Further, plaintiff asserts that like Andrew, EMS is also a large company, with over 1,700 employees and several locations worldwide, which generates roughly $300 million in annual sales.

The court notes that regardless of where the litigation proceeds, a number of defendant's employees will be forced to spend time away from their regular duties, and flights between Atlanta and Chicago are frequent and short. See Abbott Labs, 35 U.S.P.Q.2d at 1164 (noting that given the ease of travel between New Jersey and Chicago, the extra time that the defendant's employees would have to dedicate to the litigation was marginal at best). There is no doubt that defendant will sustain additional expenses and inconveniences by having to continue this litigation in Illinois. It is equally certain, however, that plaintiff will sustain additional expenses and inconveniences if the litigation is transferred to Georgia. Neither side presents evidence that it will be unable to continue the litigation in either venue. See Wm. Wrigley Jr. Co. v. Computer

Integrated Mgmt., Inc., 1990 WL 186047, at *4 (N.D. Ill. Nov. 8, 1990)("That CIM is smaller than Wrigley, without more, is not a sufficient reason to transfer this case to CIM's preferred district."). Transfer is inappropriate if it would merely shift costs from one party to another. Avesta Sheffield, 2000 WL 198462, at *7. The convenience of parties factor, therefore, favors retaining the litigation in Illinois.

In addition to the private interest factors, the court must also consider certain public interest factors that may warrant transfer: (1) the relationship of the community to the issue of the litigation and the desirability of resolving controversies in their locale; (2) the court's familiarity with applicable law; and (3) the congestion of the respective court dockets and the prospects of an earlier trial. See Hughes v. Cargill, Inc., 1994 WL 142994, at *2 (N.D. Ill. April 14, 1994).

All three public interest factors are neutral. Both Illinois and Georgia have an interest in resolving the controversy because both states presumably want to encourage further business and discourage the sale of infringing products within their boundaries. Abbott Labs, 35 U.S.P.Q.2d at 1165. Both Illinois and Georgia also have an interest in protecting the intellectual property rights of their citizens. See CoolSavings.com, 53 F. Supp. 2d at 1106-7. This court is as familiar with the laws applicable to patent infringement claims as the Northern District of Georgia. Lastly, no substantial disparity exists between the two forums relating to the issues of docket congestion and availability of earlier trial dates.[4]

---

[4]For the 12-month period ending September 30, 2003, the median time for disposition of civil cases was 9.3 months in the Northern District of Georgia and 5.5 months for the Northern District of Illinois. For the same time period, the median time from filing a civil case to trial was 25.5 months in the Northern District of Georgia and 26 months in the Northern District of Illinois. See www.uscourts.gov/cgi-bin/cmsd2003.pl.

11

Consideration of the foregoing public and private interests convinces this court that defendant has failed to meet its burden of showing that the proposed transferee forum is clearly more convenient. Only one of the private interest factors, the situs of material events, favors transfer, and the weight of that factor is tempered by the deference granted to plaintiff's choice of its home forum. None of the public interest factors support transfer to the Northern District of Illinois. Accordingly, this court upholds plaintiff's choice of forum and denies defendant's motion to transfer.

**II.     Motion to dismiss**

Defendant has moved to dismiss the complaint pursuant to Rule 8(a) and Rule 12(b)(6), arguing that plaintiff fails to state a cognizable claim for relief.

Although Rule 8 does not require detailed factual pleadings, a plaintiff's assertions must still direct defendant to the factual cause of the plaintiff's alleged injury. Kyle v. Morton High School, 144 F.3d 448, 456-57 (7th Cir. 1998). In the instant case, plaintiff's allegations are insufficient even under the most liberal interpretation of Rule 8(a). Plaintiff's allegations are simply too general to be capable of answer, and fail to give defendant proper notice of the claim. See Id. (and cases cited therein); Wiskur v. Short Term Loans, 94 F. Supp. 2d 937, 940 (N.D. Ill. 2000). Plaintiff's complaint does not identify any of defendant's products, or even what type of product produced by defendant, it accuses of infringement. Instead, the complaint lists the four Andrew Patents and alleges, "EMS has been and still is infringing the [Andrew Patents] by importing, making, selling, using or offering to sell devices embodying the patented inventions or inducing or contributing to the infringement by others of the [Andrew Patents]...." The four Andrew Patents total 270 claims, and defendant states that it manufactures more than 100

products, including "multiple antennae and antennae control systems in various iterations." Plaintiff's complaint does nothing to limit the scope of potentially infringing products.

Plaintiff argues that it has identified or implied the type of defendant's products it accuses by attaching a chart to a letter concerning settlement negotiations. Also, Petelle testified at his deposition that the accused infringing products are "[p]roducts that EMS advertises as having remote electrical tilt capability." Informal communications between parties and discovery, however, cannot cure a defective pleading. Given that plaintiff appears to know what products it accuses, it is unclear why plaintiff elected to omit this information from its complaint, but perhaps plaintiff was attempting to avoid being hemmed in by its allegations at a later date. This is unnecessary, because a plaintiff may add or remove claims pursuant to Fed. R. Civ. P. 15(a) during discovery, and may not file a deficient complaint in an attempt to fish for claims. See Chaveriat v. Williams Pipe Line Co., 11 F. 3d 1420, 1430 (7th Cir. 1993)("It is true that the original theory of the Federal Rules of Civil Procedure was that the plaintiff ought to be permitted to fumble around searching for a meritorious claim within the elastic boundaries of a bare-bones complaint until the final pretrial conference. No judge or lawyer in this age of crowded dockets takes that completely seriously ...").

For the reasons stated above, defendant's motion to dismiss the complaint is granted without prejudice. Because the court grants defendant's motion pursuant to Rule 8(a), it need not reach defendant's 12(b)(6) arguments.

### III. Motion to strike Petelle declaration

Defendant has also moved to strike the declaration of James Petelle, an attorney for plaintiff, which plaintiff filed in support of its response to defendant's motion to dismiss or to

transfer. Because the court has granted defendant's motion to dismiss and denied defendant's motion to transfer without considering inadmissible portions of Petelle's declaration, defendant's motion to strike Petelle's declaration is denied as moot.

## **CONCLUSION**

For the reasons set forth above, defendant's motion to transfer to the Northern District of Georgia is denied, defendant's motion to dismiss is granted, and defendant's motion to strike the Petelle declaration is denied as moot.

**ENTER:** **January 12, 2005**

_____
**Robert W. Gettleman**
**United States District Judge**